UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, v. **ERRON SANDERS**, Defendant. | 2:19-cr-20288 HON. TERRENCE G. BERG **ORDER GRANTING MOTION FOR RELEASE FROM DETENTION** |

Defendant Erron Sanders requests that the Court release him on bond or to home confinement pending sentencing in view of his specific health conditions and how they relate to the ongoing COVID-19 pandemic. Sanders urges that he is particularly vulnerable to the SARS-CoV-2 virus because he is 57 years old and suffers from prostrate issues, hypertension, and other medical problems. Earlier this year, he pled guilty to the offense of felon in possession of a weapon, in violation of 18 U.S.C. § 922(g)(1). He is being held at the Federal Detention Center in Milan, Michigan ("Milan FDC") pending sentencing. Sanders's age and poor health place him in a higher-risk category for COVID-19. Although staff at Milan FDC and the related Federal Correctional Institution ("Milan FCI")[1] are taking reasonable precautions to prevent or limit the

---

[1] The Bureau of Prisons website states that Sanders is being held at Milan FCI, but the government asserts he is at Milan FDC because he is a pre-sentencing detainee. ECF No. 33, PageID.158 (Gov't Response).

1

spread of the virus, as of April 8, the date of the government's response, one Milan FDC detainee had been diagnosed with COVID-19. ECF No. 33, PageID.159. As of the date of this Order, 35 Milan FCI prisoners and 25 Milan employees (some of whom work at both the FDC and FCI) have tested positive. Because Sanders originally consented to detention, no judicial officer has previously found that he poses a flight risk or a potential danger to the community, although the Pretrial Services Report did recommend detention on both grounds. Having reviewed the record and the parties' briefs, the Court is satisfied that conditions of release could be fashioned to ensure the safety of the community and Sanders's subsequent appearance for sentencing. Because of his age, comparatively poor health and strong ties in this district, the Court is convinced that releasing Sanders to home confinement will adequately address the concerns that his criminal history makes him a danger to the community, or a flight risk. Further, given the presence of COVID-19 in Milan FDC and FCI, the documented tendency of the disease to proliferate in confined settings, and the fact that Sanders will be ordered to remain in home confinement, a form of quarantine, the Court finds that granting the motion for release is more likely to reduce than exacerbate risks that Sanders or members of the public will contract COVID-19. The motion for release from detention (ECF No. 30) will accordingly be granted. Sanders will be released from detention and ordered to remain in home confinement. A separate order will issue outlining the specific conditions

of his home confinement after Pretrial Services completes a suitability inquiry.

## BACKGROUND

According to the criminal complaint in this case, Sanders committed the offense of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1 (Mar. 22, 2019 Crim. Compl.). The supporting affidavit sworn by a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") describes how ATF agents and Detroit Police Department officers executed a search-and-seizure warrant for Sanders's residence in Detroit. ECF No. 1, PageID.3–4. There, law enforcement officers discovered a Hermann Weihrauch .38 special caliber revolver, loaded with four rounds of .38 special caliber ammunition, in Sanders's bedroom. ECF No. 1, PageID.3. Because he has five previous felony convictions, it is a crime for Sanders to possess a firearm. ECF No. 1, PageID.5; 18 U.S.C. § 922(g)(1).

Sanders originally consented to detention pending trial because he was still serving a state-court sentence for a Michigan conviction. ECF No. 7 (Apr. 30, 2019 Consent Order of Detention). After completing that sentence, state authorities returned him to federal custody. ECF No. 18, PageID.47 (Def.'s Mot. for Pretrial Release). On September 11, 2019, Sanders asked to be released to a third-party custodian—his sister—pending trial. ECF No. 18. As a basis for relief, Sanders asserted that detention made communicating with his attorney difficult, and that he

3

wished to spend time with his family. *Id.* Defendant also argued that, because he lacked a significant criminal history, release conditions could be tailored to ensure the safety of the community, and his appearance at future court proceedings. *See id.*

The government opposed Sanders's request for pretrial relief. ECF No. 21. Specifically, the government expressed concern that he was a flight risk because of his limited employment history and previous use of various aliases and social-security numbers. ECF No. 21, PageID.56–58. The government also took the position that Sanders's four prior weapons arrests (the most recent of which occurred 14 years ago) and broader criminal history indicate he poses a danger to the community. *Id.*

During oral argument on the motion for pretrial release, Sanders also raised the claim that he has medical conditions that could not adequately be addressed while he remained in the custody of United States Marshalls. ECF No. 33, PageID.148 (Gov't. Resp. Br.). Defense counsel requested a continuance of the bond review hearing to allow him to gather medical records documenting Sanders's health problems, which this Court granted. Oct. 18, 2019 Dkt. Entry. Defense counsel was ultimately unable to obtain medical records supporting Sanders's assertions that he needed to undergo a medical procedure before entering Bureau of Prisons custody, but he did not withdraw the motion. *See* ECF No. 33, PageID.148.

Sanders subsequently pled guilty to Count One of the single-count indictment, which charged him with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 29 (Feb. 5, 2020 R. 11 Plea Agreement). The parties agree the applicable guidelines range for that offense is 70–87 months. ECF No. 29, PageID.96. Sentencing was scheduled for April 17, 2020 but later adjourned. (Apr. 3, 2020 Dkt. Entry). On April 7, 2020, Sanders filed the motion for release from detention pending sentencing that is now before the Court, citing concerns about COVID-19. ECF No. 30.

## DISCUSSION

Because Sanders has already pled guilty to a federal offense and is awaiting sentencing, his motion is governed by 18 U.S.C. § 3143, a provision of the Bail Reform Act applying to decisions of release or detention of a defendant pending sentencing or appeal. That statute provides that judicial officers should order detention of a defendant who has pled guilty to an offense requiring a term of incarceration "*unless* the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a). Sanders has the burden of convincing the Court that he is not a flight risk or a danger to the community. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). Notwithstanding the mandatory detention provisions of § 3143, a district court may release a defendant pending sentencing "under appropriate

conditions . . . if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate." 18 U.S.C. § 3145(c) (emphasis added).

The Court recognizes the alarming scale and gravity of the COVID-19 pandemic and the serious health risks posed by the SARS-CoV-2 virus, particularly to those who may be especially vulnerable because of preexisting health conditions or age. In some situations, potential exposure to the virus in jails or prisons may provide "exceptional reasons" warranting revocation of an order detaining a defendant pending sentencing. To assess whether concerns about COVID-19 constitute "exceptional reasons" warranting temporary release in this case, the Court will consider a number of factors that are set out in greater detail below.

As a starting point, the Court takes note of a decision by another district court in this circuit, which itself relied on a decision from a district court in Kansas. *United States v. Smoot*, No. 2:19-CR-20 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (citing *United States v. Clark*, No. 19-40068-01, 2020 WL 1446895, at *9 (D. Kan. Mar. 25, 2020)).

Both *Smoot* and *Clark* dealt with pretrial detention, in which courts must consider whether "compelling" reasons support release under § 3142(i), while this case involves a defendant awaiting sentencing, where the standard requires a finding of "exceptional" reasons under § 3143(a). The Court nonetheless finds the factors articulated in those

6

two cases helpful to assessing whether release is warranted in this case, where the defendant has already been convicted and is awaiting sentencing.

The factors set out in *Smoot* and *Clark* are: (1) the original grounds for the defendant's detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See Smoot*, 2020 WL 1501810 at *2; *Clark*, 2020 WL 1446895 at *9. While helpful, these factors do not explicitly require the Court to consider the actual conditions in the facility where the defendant is being held, and in particular the measures being taken there to address the potential outbreak of COVID-19. Consequently, the Court will apply a modified set of factors based on those in *Smoot/Clark* in considering whether the defendant has set out exceptional reasons in favor of release:

(1) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);

(2) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);

    (3)    whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community;

    (4)    the original grounds for the defendant's pretrial detention.

Here, the Court finds these factors weigh in favor of revoking the detention order and releasing Sanders to home confinement. First, Sanders, who is 57 years old, has identified specific preexisting health conditions—prostate issues, hypertension, and other problems—that warrant heightened concern about his potential exposure to COVID-19. Prisoners with chronic medical problems "face serious risks to their health" during this pandemic. *Basank v. Decker*, No. 20 Civ. 2518 (AT), 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) ("The nature of detention facilities makes exposure and spread of the virus particularly harmful."). The Centers for Disease Control have issued guidance explaining that people of advanced age, with underlying health problems, or both, are more susceptible to experiencing serious complications from COVID 19. *People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL (Mar. 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Several courts, including two in this district, have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic. *See United States of America v. Patino*, No. 18-cr-20451, 2020

WL 1676766, at *2 (E.D. Mich. Apr. 6, 2020) ("Mr. Patino is at high risk due to stage 3 chronic kidney disease and hypertension, and his age (63 years old)."); *United States v. Doshi*, No. 13-cr-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (recommending that prisoner with hypertension and diabetes be placed in home confinement); *Basank*, 2020 WL 1481503 at *3 (releasing detainee with hypertension from civil immigration detention due to COVID-19 concerns). Sanders has identified specific concerns that he is particularly vulnerable to suffering serious complications from COVID-19 because of his hypertension, as well as his somewhat vaguely defined prostate concerns and more advanced age. Although Sanders's health problems are not well-documented, the Court takes him at his word and observes that the government has not provided information contradicting his stated diagnoses.

On balance, the conditions in FDC Milan (where Sanders is being held) and FCI Milan also weigh somewhat in favor of releasing him to home confinement pending sentencing. As of April 8—the most recent data this Court has access to for FDC Milan—only one FDC detainee had been diagnosed with COVID-19. ECF No. 33, PageID.159. But more recent data shows that 35 Milan FCI prisoners and 25 Milan employees (some of whom work at both the FDC and FCI) have tested positive. *COVID-19 Cases*, FEDERAL BUREAU OF PRISONS (Apr. 15, 2020), https://www.bop.gov/coronavirus/#. Of the 35 infected prisoners at Milan,

two of them are at the FDC, where Sanders is. At the same time, the BOP, including FDC and FCI Milan, is taking a number of precautionary measures to reduce the spread of the virus in federal detention facilities. For example, the facility is screening all newly arriving prisoners for COVID-19 symptoms and exposure and quarantining them for 14 days as a matter of course (whether or not they display symptoms). ECF No. 33, PageID.159–60. Correctional officers are also being regularly screened for symptoms, including by having their temperatures taken. *Id.* at PageID.160. The facility has suspended in-person visitation and attorney conferences, and increased sanitation measures, including by providing inmates with disinfectant for use in their cells. *Id.* Additionally, operation and programming for detainees has been "modified in order to assist with social distancing efforts." *Id.* Despite these efforts, it is well-established that "the high density of prison populations makes federal prisons ideal transmission grounds for the virus." *Doshi*, 2020 WL 1527186 at *2. *See Basank*, 2020 WL 1481503 at *3 ("The nature of detention facilities makes exposure and spread of the virus particularly harmful."); *United States v. Garlock*, No. 18-cr-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (collecting cases). Despite the BOP's diligent efforts to prevent transmission of the virus among detainees and employees, the fact that FCI Milan already has a number of diagnosed COVID-19 cases weighs in favor of transferring

10

Sanders to home detention in light of his age, comparatively vulnerable health, and physical condition.

Sanders's proposed release plan appears likely to mitigate the risk of his exposure to COVID-19 and unlikely to exacerbate any risk of transmitting the virus to the public. He proposes home confinement, with or without a tether, as a condition of release. This is consistent with federal social-distancing guidelines, and Governor Gretchen Whitmer's stay-at-home order. The Court is further swayed by the fact that both of Sanders's proposed home-confinement locations—his significant other's home in Grand Rapids, and his sister's home in Detroit—are in Michigan. Accordingly, transfer to home confinement would not involve lengthy or interstate travel, which tends to heighten the risk of transmission.

Finally, there has not previously been any judicial finding as to grounds warranting defendant's pretrial detention. Although the Pretrial Services Report issued in May 2019 recommended detention, at this juncture the Court is satisfied that conditions of release can be fashioned to reasonably ensure Sanders does not pose a flight risk, or a danger to the community. Pretrial Services originally recommended detention because of Sanders's previous use of aliases and multiple social-security numbers, as well as his criminal history, which includes drug and weapons arrests. ECF No. 33, PageID.150–51. The Court finds it relevant, however, that Defendant's most recent drug arrest and conviction occurred two decades ago, in 2000–01. *Id.* His most recent

weapons arrests and convictions—other than the instant felon-in-possession conviction—occurred in 2006–07. *Id.* at PageID.151. Although the affidavit sworn by an ATF agent in support of the application for the search warrant that led to Sanders's current felon-in-possession conviction describes recent drug-trafficking by Defendant, Sanders was never indicted for any crime arising from those activities. *See* ECF No. 33-2. The Court is satisfied that revoking detention and releasing Sanders to home confinement in Michigan will mitigate his risk of contracting COVID-19 without increasing the likelihood of community spread. All four factors considered by the Court thus weigh in favor of revoking the detention order and relegating Sanders to home confinement.

## CONCLUSION

For these reasons, Erron Sanders's motion for release to home confinement (ECF No. 30) is **GRANTED**. Defendant's prior motion for release (ECF No. 18) is **DENIED AS MOOT**. A separate order will issue describing in detail the conditions of Sanders's home confinement pending sentencing.

**IT IS FURTHER ORDERED** that Sanders be immediately placed in a 14-day quarantine before his release from FDC Milan, in accordance with Attorney General Barr's directive to the BOP.

The Court will schedule a telephonic hearing on the question of what specific conditions should accompany Sanders's release to home

confinement. Any such hearing must take place within 14 days of the date of this Order—while Sanders is in his 14-day quarantine at FDC Milan—so that Sanders's release is not needlessly delayed. At such hearing the Court will allow the parties to present whatever additional arguments or evidence relevant to this matter including, if necessary, any motion to reconsider this Order.

**SO ORDERED.**

Dated: April 17, 2020         s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE